**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| AWAIS AHMED KHAN | : | |
| | : | |
| Appellant | : | No. 1246 MDA 2020 |

Appeal from the Judgment of Sentence Entered September 14, 2020
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-SA-0000310-2019

BEFORE:    MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:    **FILED: MAY 3, 2021**

Awais Ahmed Khan (Khan) appeals from the September 14, 2020 judgment of sentence imposed by the Court of Common Pleas of Cumberland County (trial court) following his conviction for one count of driving under suspension.  Khan argues that the trial court erred in denying his motion to suppress.  We affirm.

We glean the following facts from the certified record.  At approximately 1:49 a.m. on August 3, 2019, Officer Johannes Notz (Officer Notz) of the Hampden Township Police Department stopped a black Toyota Prius because

_____

[*] Retired Senior Judge assigned to the Superior Court.

it had an inoperable license plate light and darkly tinted windows.[1]   He identified Khan as the driver of the vehicle and learned that his driver's license was suspended as a result of a DUI conviction.   After stopping the vehicle, Officer Notz used his tint meter on the vehicle's windows and obtained a reading of 14% light transmittance.[2]

Officer Notz explained that prior to pulling Khan over, he observed that the tint on his windows was darker than normal, making it difficult to see inside the vehicle.   The tint covered the vehicle's front and back passenger windows.   He explained that he could tell that there were people inside the vehicle, but he was unable to identify the driver from the outside because of the tint.   Officer Notz did not look for any manufacturers' stickers on the windows that would have explained the tint.   Regarding the license plate light, Officer Notz explained that a license plate typically has two lights and the one on the driver's side of Khan's vehicle was not working.   The functioning light illuminated half of the license plate.   Officer Notz could not recall whether he had been able to read the full license plate with the single functioning light.

---

[1] Officer Notz testified that he had some "basic training" regarding tinted windows and the tint meter he used to measure a window's tint.  Notes of Testimony, 7/24/20, at 4.

[2] The trial court sustained Khan's objection to the admission of this evidence for the truth of the matter asserted, but admitted it limited to determining the constitutionality of the stop.  Notes of Testimony, 7/24/20, at 8.  As discussed **infra**, we do not consider this evidence in determining that the stop was supported by reasonable suspicion.

Officer Notz cited Khan for driving under suspension, 75 Pa.C.S. § 1543(b)(1)(i), and unlawful activities based only on the window tint, 75 Pa.C.S. § 4107(b)(2). Khan was found guilty in the magisterial district court and filed a summary appeal for a *de novo* trial in the trial court. Officer Notz was the sole witness at trial and the hearing focused primarily on Khan's motion for suppression on the basis that the traffic stop was not supported by reasonable suspicion or probable cause.[3]

The trial court denied the motion to suppress and found Khan guilty of driving under suspension and not guilty of unlawful activities. It subsequently sentenced him to 90 days of electronic monitoring and house arrest. Khan timely appealed and he and the trial court have complied with Pa.R.A.P. 1925.

_____

[3] Khan did not file a written motion to suppress prior to his *de novo* trial. However, at the beginning of the trial, Khan's counsel stipulated that Khan's license had been suspended and stated "[o]ur only issues are with suppression for the reason for the stop." Notes of Testimony, 7/24/20, at 3. The trial record is clear that the parties and the trial court were examining Officer Notz for the purpose of determining his basis for conducting the traffic stop of Khan's vehicle. The Commonwealth and Khan made argument following the hearing regarding suppression, and the trial court ruled on the merits. *Id.* at 19-26. The trial court further addressed the merits of the suppression claim in its opinion pursuant to Pa.R.A.P. 1925(a). We have previously declined to find waiver in similar circumstances where the defendant did not file a written motion to suppress in a summary proceeding, but the Commonwealth did not object to consideration of the motion at trial, the lower court addressed the issue on the merits, and the adjudication of summary proceedings in general "entails truncated procedures." *See **Commonwealth v. Downey***, 39 A.3d 401, 404 (Pa. Super. 2012). Thus, we address the merits of Khan's claim.

Khan presents one question on appeal: whether the trial court erred in denying his motion to dismiss[4] the citations based on its finding that Officer Notz had reasonable suspicion or probable cause to stop his vehicle.[5] Khan contends that his single burnt-out license plate light and the window tint on his vehicle did not provide the requisite reasonable suspicion or probable cause for Officer Notz to stop his vehicle.

The Vehicle Code provides that:

Whenever a police officer. . . has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

_____

[4] Khan refers to his motion in his brief and in the trial court as a motion to dismiss, as suppression of the traffic stop would result in dismissal of the citations. It is clear from the record that Khan was seeking to suppress any evidence obtained during an unlawful traffic stop.

[5] An appellate court's standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [Because] the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Postie***, 110 A.3d 1034, 1039 (Pa. Super. 2015) (citation omitted).

75 Pa.C.S. § 6308(b). A traffic stop based on reasonable suspicion must serve an investigatory purpose, while a stop based on an observed vehicle code violation or "non-investigable offense" must be supported by probable cause. *Commonwealth v. Harris*, 176 A.3d 1009, 1019 (Pa. Super. 2017). To establish reasonable suspicion that a violation of the Vehicle Code has occurred, "the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." *Commonwealth v. Muhammed*, 992 A.2d 897, 900 (Pa. Super. 2010) (citation omitted). Put simply, the officer must have a reasonable belief that a violation of the Vehicle Code is occurring or has occurred at the time of the stop. *Id.* at 900-01.

Officer Notz charged Khan with one count of unlawful activities based on the window tint. 75 Pa.C.S. § 4107(b)(2). That section of the Vehicle Code prohibits an individual from operating a motor vehicle that is in violation of the Pennsylvania Department of Transportation (PennDOT) regulations. *Id.* The Commonwealth argues that Officer Notz had reasonable suspicion to believe Khan's vehicle was in violation of the PennDOT regulations related to glazing. *See* 67 Pa. Code § 175.67(d). Under § 175.67(d), subject to certain exceptions and specific requirements, "[a] sun screening device or other material which does not permit a person to see or view the inside of the vehicle

is prohibited." The regulation refers to Table X, which requires that windows in a passenger vehicle meet at least a 70% light transmittance requirement. 67 Pa. Code § 175 Table X. Based on his observations of Khan's vehicle, the Commonwealth contends that Officer Notz had reasonable suspicion to stop the vehicle and investigate whether the windows were in compliance with that regulation. We agree.

Because the offense of unlawful activities based on the window tint required additional investigation for Officer Notz to determine whether Khan's vehicle complied with the light transmittance requirements of the Vehicle Code, reasonable suspicion was required to support the traffic stop.[6] **See** 75 Pa.C.S. § 4107(b)(2); 67 Pa. Code § 175 Table X. Officer Notz testified that prior to the vehicle stop, he observed that Khan's windows were darker than windows he normally sees on cars, making it difficult to see inside the vehicle. He could not see inside the vehicle to identify the driver before the stop but could see outlines of individuals sitting in the car. He testified that the tint

---

[6] Khan cites **Commonwealth v. Brubaker**, 5 A.3d 261 (Pa. Super. 2010), for the proposition that there was no probable cause or reasonable suspicion to stop his vehicle for a violation of 75 Pa.C.S. § 4524(e) ("sunscreening and other materials prohibited") when Officer Notz was able to see outlines of individuals in the car and the view was not completely obstructed. However, Officer Notz did not stop Khan's vehicle to investigate a possible violation of that subsection of the Vehicle Code. He believed Khan was in violation of § 4107(b)(2) for operating a vehicle with tinted windows that did not comply with PennDOT regulations related to light transmittance, making **Brubaker** inapplicable.

was applied to all four passenger windows and the rear window. Based on these observations, he had reasonable suspicion to stop the vehicle and conduct further investigation into whether Khan's vehicle complied with the Table X related to vehicle tint. *See* 75 Pa.C.S. § 6308(b); **Muhammed**, **supra**. In the course of conducting this investigation by speaking with Khan and using the tint measurement device, Officer Notz learned that Khan's driver's license was suspended.

Much of Khan's argument on appeal focuses on the scientific validity of the tint measurement device that Officer Notz used on Khan's windows *after* stopping the vehicle. *See* Khan's Brief at 15-18. However, the information Officer Notz gleaned from this device is not relevant to our analysis of whether the stop itself was supported by reasonable suspicion. By the time Officer Notz used the device to measure the window tint, Khan had already been seized.[7] In determining whether this seizure was supported by reasonable

---

[7] Khan points to an exchange between Officer Notz and the trial court as evidence that Officer Notz relied on the tint meter as retroactive justification for the vehicle stop:

> [The court]: I want to ask a couple questions or have you describe to me what you saw with this window tint, not what you tested, but what you saw when you pulled him over in part for the window tint?
>
> [Officer Notz]: Like the reason for the pull—
>
> Q: Yeah. What does his windows look like compared to what normal windows look like?

suspicion, we consider only the facts known to Officer Notz prior to effectuating the traffic stop. ***Muhammed***, ***supra***. Arguments related to the scientific validity and reliability of the measurement device were properly addressed by Khan to the admissibility of the evidence at trial or the sufficiency of the evidence to support a conviction for unlawful activities.[8] As discussed ***supra***, Officer Notz's observations of Khan's windows prior to the stop were sufficient to establish reasonable suspicion of a violation of

_____

A: So they're darker. **With 15 percent, it's going to be hard to see inside the vehicle.** It's going to be hard to identify the driver which I did not identify the driver prior to the stop.

Q: So when you looked at his vehicle from your vehicle, what did you see regarding his windows?

A: Darker windows than normal, than what I see on a normal vehicle.

Q: And you couldn't see through those from your vehicle?

A: Correct, not to the fact of being able to identify the driver.

Notes of Testimony, 7/24/20, at 13 (emphasis added). We do not view this exchange as Officer Notz relying on the tint meter reading to justify the stop. He was merely explaining how a window with a 15% light transmittance reading would visually appear compared to other vehicles he would typically see on the road. This comparison was relevant to establish the basis for Officer Notz's suspicion that Khan's windows were not in compliance with PennDOT regulations.

[8] The trial court found Khan not guilty of the offense of unlawful activities.

§ 4107(b)(2), necessitating his further investigation through the traffic stop.

As a result, the trial court did not err in denying the motion to suppress.[9]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/03/2021

---

[9] Because we hold that the stop was justified based on reasonable suspicion related to § 4107(b)(2) for the window tint, we need not address Khan's argument that the stop could not be justified by the inoperable license plate light.